IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORKHAN GULIYEV, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID SANDBERG, W. CARL DREW, | )  C.A. No. 20-cv-607 (MN) |
| DANIEL GILL, PATRICK GOEPEL, | ) |
| CHARLES LATHROP, JR., BRADFORD | ) |
| OBERWAGER, BJORN REYNOLDS, and | ) |
| ASURE SOFTWARE, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Christopher J. Kupka, Samir Shukurov, William J. Fields, FIELDS KUPKA & SHUKUROV LLP, New York, NY – Attorneys for Plaintiff

A. Thompson Bayliss, Daniel John McBride, ABRAMS & BAYLISS LLP, Wilmington, DE – Attorneys for Defendants.

February 16, 2021
Wilmington, Delaware

*Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Orkhan Guliyev filed a Complaint against nominal defendant Asure Software, Inc. ("Asure") and seven members of Asure's board of directors (collectively, "Defendants"), based on the filing of an allegedly false or misleading proxy statement. (D.I. 1). The parties stipulated to voluntarily dismiss the action (D.I. 8), and the Court ordered the dismissal (D.I. 9). Pending before the Court is Plaintiff's Motion for an Award of Attorneys' Fees and Expenses. (D.I. 11). The motion is fully briefed. (*See* D.I. 12; D.I. 17; D.I. 19). For the reasons set forth below, the motion is GRANTED-IN-PART and Plaintiff is awarded $8,500 in attorneys' fees and $172.13 in expenses.

## I. BACKGROUND

On April 27, 2020, Defendants filed a Schedule 14A Proxy Statement ("the Proxy") with the U.S. Securities and Exchange Commission ("SEC") to solicit shareholder votes in advance of the annual meeting of Asure stockholders on May 27, 2020. (*See* D.I. 13-1). Among other things, the Proxy sought shareholder approval to amend the company's Restated Certificate of Incorporation ("the Certificate") to increase the total number of authorized shares of capital stock from 23,500,000 to 45,500,000 and the total number of authorized shares of common stock from 22,000,000 to 44,000,000. (*Id.* at 4). The Proxy stated that approval of the proposed amendment required "a majority of the shares of common stock present in person or represented by proxy at the Annual Meeting." (*Id.* at 8). The proposed amended Certificate was attached as an appendix to the Proxy and stated that approval was governed by Delaware General Corporation Law § 242. (*Id.* at 39).

Plaintiff is an Asure shareholder. (D.I. 1 ¶ 1). On May 4, 2020, Plaintiff filed a complaint against Defendants, alleging that the Proxy was false and misleading because, under Delaware law, amending a certificate of incorporation requires the approval of a majority of the outstanding

stock entitled to vote thereon.  (*Id.* ¶ 4 (citing 8 Del. C. § 242(b)(1)).  Plaintiff alleged a violation of Section 14(a) of the Securities Exchange Act of 1934 and breach of fiduciary duty.  (*Id.* ¶¶ 28–41).  Plaintiff sought declaratory relief and a preliminary injunction against the stockholder vote that was to be held on May 27, 2020.  (*Id.* ¶¶ 42–46; D.I. 4).

The day after Plaintiff filed his complaint, Asure filed a Supplement to the Proxy, stating the correct standard for amending the Certificate in accordance with Delaware law.  (D.I. 13-2 at 3).  On May 18, 2020, the parties filed a stipulation of voluntary dismissal, agreeing that the Supplement addressed and mooted Plaintiff's action.  (D.I. 8).  The next day, the Court ordered dismissal.  (D.I. 9).

On June 9, 2020, Plaintiff filed a motion for attorneys' fees and expenses.  (D.I. 11).  Plaintiff sought a fee award of $120,000, based on 45.45 attorney hours and $792.19 in expenses, for securing the corrected disclosure on behalf of Asure and its shareholders.  (D.I. 12 at 1, 17; D.I. 13 at 2; D.I. 14 at 1).

## II. LEGAL STANDARDS

"The determination of an attorney fee award is a matter within the sound judicial discretion" of the court.  *Ams. Mining Corp. v. Theriault*, 51 A.3d, 1213, 1255 (Del. 2012).  "While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery."  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391–92 (1970).  "A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself."  *Id.* at 392.

Delaware courts have long recognized, under the "common corporate benefit" doctrine, that "a litigant who confers a common monetary benefit upon an ascertainable stockholder class is

entitled to an award of counsel fees and expenses for its efforts in creating the benefit." *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997). If a corporate defendant takes corrective action that renders a plaintiff's complaint moot, the plaintiff nonetheless may be entitled to an award of fees upon showing "as a preliminary matter, that: (1) the suit was meritorious when filed; (2) the action producing benefit to the corporation was taken by the defendants before a judicial resolution was achieved; and (3) the resulting corporate benefit was causally related to the lawsuit." *Id.* at 1079–80. When assessing the size of an award of attorneys' fees, Delaware courts may consider the so-called *Sugarland* factors: "1) the results achieved; 2) the time and effort of counsel; 3) the relative complexities of the litigation; 4) any contingency factor; and 5) the standing and ability of counsel involved." *Ams. Mining*, 51 A.3d at 1254 (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)).

### III.   DISCUSSION

#### A.   Plaintiff's Entitlement to Attorneys' Fees

Plaintiff has established that he is entitled to an award of attorneys' fees, subject to the Court's discretion. Plaintiff asserted meritorious claims that Defendants' Proxy contained materially false and misleading statements. (D.I. 12 at 6–10). Plaintiff argues that the Proxy's misstatement was material because the right to vote is an essential right of stockholders, and a reasonable stockholder would have considered the approval standard important in deciding how to vote. Furthermore, the Proxy's misstatement of law was readily apparent from the Proxy itself and review of the statutes it referenced. *See Chrysler Corp. v. Dann*, 223 A.2d 384, 387 (Del. 1966) (holding that a meritorious claim requires "some reasonable hope" of ultimate success). Next, Plaintiff argues that his action benefited the company and its shareholders because he caused Asure to comply with federal securities laws and shielded the company from the potential cost of validity challenges to the amended Certificate. (D.I. 12 at 10–12). *See Mills*, 396 U.S. at 396.

3

Finally, Plaintiff contends that Defendants failed to rebut the strong presumption that Plaintiff's lawsuit caused Defendants to correct the Proxy. (D.I. 12 at 12). *See United Vanguard*, 693 A.2d at 1080 ("Where . . . a corporate defendant, after a complaint is filed, takes action that renders the claims asserted in the complaint moot, Delaware imposes on it the burden of persuasion to show that no causal connection existed between the initiation of the suit and any later benefit to the shareholders.").

Thus, Plaintiff's action, although mooted by Defendants, warrants an award of attorneys' fees and costs for conferring benefit on fellow stockholders.

### B.  *Sugarland* Factors Applied

Defendants do not dispute that Plaintiff's lawsuit was meritorious, conferred benefit – albeit, according to Defendants, *de minimis* benefit – to the company, and caused Defendants to correct the false and misleading Proxy. (D.I. 17 at 6). The crux of Defendants' opposition, however, is that "Plaintiff's counsel should not be disproportionately rewarded for the result achieved by filing this lawsuit," and the award of attorneys' fees, if any, should be much less than the requested amount of $120,000. (*Id.* at 7–9). Applying the *Sugarland* factors to determine a reasonable award, the Court agrees with Defendants.

#### 1.  Benefits Achieved

When determining a reasonable award of attorneys' fees, "Delaware courts have assigned the greatest weight to the benefit achieved in litigation." *Ams. Mining*, 51 A.3d at 1254. The benefit to the company and its shareholders "need not be measurable in economic terms" to merit an award of fees. *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989). For example, "[w]henever a plaintiff generates enhanced disclosure in connection with stockholder action, [a] benefit is conferred." *In re Sauer-Danfoss Inc. S'holders Litig.*, 65 A.3d 1116, 1136

(Del. Ch. 2011). To determine a reasonable attorney fee in a case of enhanced corporate disclosure, "[a] court can readily look to fee awards granted for similar disclosures in other transactions." *Id.*

*Mirzayev v. Monaco* is instructive to quantify the amount of benefit conferred by Plaintiff's litigation. No. 2019-0331-JRS, 2019 WL 2394163 (Del. Ch. June 6, 2019). In *Mirzayev*, defendants issued a proxy statement that sought approval to increase the number of authorized shares of common stock and stated that approval required a majority of shares voted at the shareholder meeting. *Id.* at *1. Six days later, plaintiff shareholder challenged the proxy under § 14(a) and sought to enjoin the shareholder vote until defendants corrected the proxy to state that approval required a majority of outstanding shares entitled to vote. *Id.* Three days after plaintiff filed suit, defendants amended the proxy and rendered the challenge moot. *Id.* Defendants agreed to pay plaintiff's counsel $82,500, and the court granted that amount. *Id.*

Although the court did not assess the fee award in *Mirzayev*, the agreed-upon sum is an indicator of how the parties valued plaintiff's litigation efforts. The facts in the present case closely resemble those in *Mirzayev*. Additionally, Defendants argue that Plaintiff conferred less benefit because the proposal at issue passed with 74% approval, and thus any validation process would have been straightforward.[1] (D.I. 17 at 10). Accordingly, the Court estimates that Plaintiff's

---

[1] Plaintiff claims – but, to the Court's knowledge, has not sought relief on the basis – that Defendants improperly counted broker non-votes in favor of the proposal, and, discounting these votes, the proposal won only by a margin of 3.48%. (D.I. 12 at 9 n.4; D.I. 19 at 3). A broker non-vote results when a broker has not received voting instructions from the beneficial owner of stock. (D.I. 13-1 at 9). The Proxy stated that broker non-votes would count as a vote against the proposal to amend the Certificate. (*Id.*). After the 2020 shareholder meeting, Asure filed a Form 8-K Current Report stating that there were 3,271,588 broker non-votes for four proposals and 0 broker non-votes for two proposals, including the proposal to amend the Certificate. (D.I. 20-1 at 3). Plaintiff's counsel asserts, "it is reasonable to conclude" that Defendants improperly counted the 3,271,588 broker non-votes as votes in favor of the proposal. (D.I. 20 at 1). The Court is not persuaded by this line of speculation and furthermore notes that, even under Plaintiff's miscounting theory, the proposal would have been approved.

5

litigation benefit was worth $80,000. *See also Sauer-Danfoss*, 65 A.3d at 1138 (applying a base of $75,000 to $80,000 for the "minimally beneficial disclosure" that plaintiff obtained); *In re Xoom Corp. Stockholder Litig.*, Consolidated Civil Action No. 11263-VG, 2016 WL 4146425, at *5 (Del. Ch. 2016) (finding that the "Supplemental Disclosures worked a modest benefit on the stockholders" and granting $50,000 in fees and costs).

Plaintiff nonetheless asserts that his request for $120,000 is "in line with comparable cases where stockholders have caused resolution of voting rights issues." (D.I. 12 at 3, 14). The cases he cites, however, involve highly varied facts, legal issues, and procedural postures, resulting in fee awards ranging from $82,500 (*Mirzayev*) to $5.5 million (*In re Cheniere Energy, Inc. Stockholders Litig.*, Consolidated C.A. No. 9710-VCL (Del. Ch. Mar. 17, 2015) (settlement hearing transcript) (D.I. 13-5 at 104:23)). *See also Olson v. EV3, Inc.*, C.A. No. 5583-VCL, 2011 WL 704409, at *15 (Del. Ch. Feb. 21, 2011) (granting $1.1 million fee award because plaintiff's successful challenge to relatively untested "top-up option" deal feature fixed "[d]eep faults" in corporate structure and "prevented the seeds of a future legal crisis from germinating"). Plaintiff does not explain how he arrived at his $120,000 request, only stating that this sum is reasonable because it is smaller than other fee awards that have been granted. (*See, e.g.*, D.I. 12 at 16 (citing *Cheniere* and *Olson*)). Because Plaintiff does not reconcile the vast differences between his authorities and the facts of this case, the Court finds no support for a $120,000 award. Instead, the Court treats *Mirzayev* as instructive and estimates the value of Plaintiff's action to be $80,000.

### 2. Secondary Factors

Next, the Court turns to the secondary *Sugarland* factors, concerning the nature of the litigation. The secondary factors serve as a check "to avoid conferring unhealthy windfalls" on counsel. *Sauer-Danfoss*, 65 A.3d at 1140–41 (granting modest fee award to plaintiff that assumed minimal litigation risk by taking advantage of a "ready-made settlement opportunity"). Here,

secondary factors counsel further reducing the fee award relative to the benefit achieved by Plaintiff's litigation. The legal issue was not complex and could have been resolved with minimal time and effort. The error in Defendants' Proxy was readily apparent, if not based on counsel's familiarity with Delaware corporate law, then from the proposed amended Certificate included in the Proxy's appendices. Counsel could have quickly alerted Defendants to the error by phone call, email, or letter, which also would have saved counsel the expenses of filing and serving process. (*See* D.I. 14 at 2). Overall, researching the legal issue and notifying Defendants may have taken counsel *at most* five hours. Moreover, although counsel represented Plaintiff on a fully contingent basis, it assumed minimal litigation risk in doing so because the Proxy was undeniably erroneous and easily remedied.[2] *See id.* at 1140 ("[D]isclosure claims are relatively safe in terms of forcing a settlement" (internal quotation, citation, and marks omitted)); *In re Cox Radio, Inc. S'holders Litig.*, Civil Action No. 4461-VCP, 2010 WL 1806616, at *21 (Del. Ch. May 6, 2010) (discounting the "contingent basis" factor because filing Plaintiffs' disclosure-based claim "virtually guarantee[d] Plaintiffs' counsel a fee").

Plaintiff claims that his requested fee award is justified because his counsel expended 45.45 attorney hours on a fully contingent basis to conduct research, draft and file a complaint, and draft and file a motion for preliminary injunction. (D.I. 12 at 16–17). Plaintiff also contends that the specialized knowledge and ability of his counsel were necessary to resolve the issues. (*Id.* at 18). The Court does not doubt that counsel's litigation work took effort, time, and skill. In this case, however, the extent of counsel's work does not appear to have been necessary, and the Court is

---

[2] Defendants also contend, based on attorney communications, that the misstatement in the Proxy was merely a "scrivener's error" resulting from new work-from-home conditions imposed by the novel coronavirus (COVID-19). (D.I. 17 at 3–5, 9). Plaintiff does not appear to have been privy to those communications, however, and Defendants' excuse has no bearing on the calculation of Plaintiff's fee award.

reluctant to grant a fee award based on unnecessary litigation that Plaintiff and his counsel took on at their own behest.

Plaintiff also argues that he should not be penalized for failing to make a demand on directors because such demand was not a condition precedent to his lawsuit and could have easily been unsuccessful. (D.I. 19 at 6). Indeed, Plaintiff was not required to make a demand on Asure's directors, and any attempt to do so might have failed. The Court, however, does not penalize Plaintiff for failing to make a demand; it simply does not reward Plaintiff for seeking the extreme remedy of judicial action without first exploring the possibility of extrajudicial resolution.

Thus, in its discretion, the Court declines to grant Plaintiff's requested $120,000 fee award. The Court recognizes that Plaintiff's action conferred a benefit on stockholders, valued around $80,000. Assuming that this benefit includes $792.19 of expenses and 45.45 attorney hours, the Court values counsel's efforts on this matter at $1,700 per hour.[3] To avoid conferring a windfall on counsel, the Court will grant a fee award based on five attorney hours – the most the effort should have taken. Thus, Plaintiff is awarded $8,500 in attorneys' fees. Plaintiff is awarded research expenses of $172.13. (*See* D.I. 14 at 2).

---

[3] Delaware courts have rejected a rigid "lodestar" approach to calculating fee awards based on reasonable attorney hours multiplied by a reasonable rate. *Sugarland*, 420 A.2d at 150. Courts, however, have continued to use the lodestar calculation as a "backstop check" for the reasonableness of a fee award granted under *Sugarland*. *In re Abercrombie & Fitch Co. S'holders Derivative Litig.*, 886 A.2d 1271, 1274 (Del. 2005). *See also Vinh Du v. Blackford*, Civil Action No. 17-cv-194, 2018 WL 6604484, at *9 (D. Del. Dec. 17, 2018); *Cox Radio*, 2010 WL 1806616, at *23 n.172; *Seinfeld v. Coker*, 847 A.2d 330, 338–39 (Del. Ch. 2000). Here, although neither party has argued or presented evidence for what constitutes a reasonable fee rate, the Court considers $1,700 per hour to be reasonable. By contrast, Plaintiff's requested $120,000 fee award for 45.45 attorney hours correlates to a fee rate of about $2,600 per hour, a figure for which Plaintiff has provided no support.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees and expenses is GRANTED-IN-PART and Plaintiff shall be awarded $8,500 in attorneys' fees and $172.13 in expenses. An appropriate order follows.